Ollie BARNES and Robert Lee Jefferson, individually and on behalf of all others similarly situated, Plaintiffs,

v.

TARRYTOWN URBAN RENEWAL AGENCY et al., Defendants.

No. 71 Civ. 4243.

United States District Court, S. D. New York.

Nov. 16, 1971.

The Legal Aid Society of Westchester County, White Plains, N. Y., for plaintiffs by Martin. A. Schwartz, John T. Hand, Norman B. Lichtenstein, White Plains, N. Y., of counsel.

Kreindler, Relkin, Olick & Goldberg, New York City, for defendants Tarrytown Urban Renewal Agency and Raymond Brown by Arthur S. Olick, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., for defendants Dept. of Housing and Urban Development, George Romney, as Secretary, and S. William Green, as Regional Administrator by Milton Sherman, New York City, of counsel.

GURFEIN, District Judge.

The Village of Tarrytown, through the Tarrytown Urban Renewal Agency (TURA), a public benefit corporation, has undertaken an extensive program for the clearance and reconstruction or rehabilitation of slum areas within its territorial limits. The Tarrytown Urban Renewal project is federally and state funded, and provides for the redevelopment of the project area for residential, industrial and commercial uses. The redevelopment is now entering its final stages. Already built are extensive low- and middle-income housing projects, new roadways and utilities and some commercial and industrial structures.

In connection with the Urban Renewal project, a number of family units living in substandard and unhealthy structures had to be relocated. Provision has been made for all such persons either in private relocation housing or in the low-rent or middle-income projects which have been built in the Urban Renewal area. Most families have already been relocated. However, a small number of family units, including the plaintiffs herein, are still to be relocated. .

The plaintiffs in this action, Ollie Barnes and her son, Robert Lee Jefferson, are both residents of Tarrytown and live in the premises known as 108 Wildey Street located in the Urban Renewal area. Both are unable to work because of physical disability and must be supported entirely by public assistance under the Aid to Disabled program.

The plaintiffs have resided in their present premises for a period of about one and a half years. Prior thereto they were housed in other premises at 122 Main Street, Tarrytown, New York, which is also located in the Urban Renewal area. In sum total, the plaintiffs have resided in four different apartments provided by defendant Urban Renewal Agency for a period of six years past, some of those apartments eventually being classified as not habitable.

Sometime during February of 1971, Ollie Barnes was advised by an employee of the defendant Agency (TURA) that demolition of the premises at 108 Wildey Street was imminently scheduled and she would be required to move to other housing. The defendant Agency offered to relocate plaintiffs to an apartment located at 80 Franklin Street, Tarrytown, New York.

Thereafter, the plaintiff Ollie Barnes visited the premises at 80 Franklin Street and considered the apartment to be substandard housing which would be unsafe for her and her son. She also alleges that these premises are in violation of provisions of the Multiple Residence Law of the State of New York, and applicable housing codes of the Village of Tarrytown. Subsequent to her visit to the said premises at 80 Franklin Street, Ollie Barnes advised TURA that she and her son could not accept the apartment offered because it was substandard and unsafe and that residence therein would be seriously detrimental to their health.

Nevertheless, the director of the defendant TURA advised the plaintiff that if she did not accept the apartment, she and her son would be evicted from their present dwelling at 108 Wildey Street. Thereafter, allegedly on instructions of the defendant TURA, the electricity and water in plaintiffs' present premises were shut off for a period of four days.

Service was restored after a telephone call from the Legal Aid Society to defendant Raymond Brown, Executive Director of TURA. In the early part of September 1971 the plaintiff was once more allegedly threatened with eviction by the defendant TURA unless she accepted the premises at 80 Franklin Street. She was given until September 13, 1971 to comply.

On September 14, 1971, the plaintiff received a letter from defendant Brown advising that eviction proceedings would be commenced against her if she did not move immediately; disclaiming further responsibility for relocating the plaintiffs; and stating that any priority to which plaintiffs would be entitled, insofar as application for public housing was concerned based upon their status as urban renewal residents, was annulled. Mrs. Barnes was also later told she could no longer expect to receive her moving expenses or other financial assistance. Neither HUD nor the members of the agency (TURA) had sanctioned Brown's statements. The plaintiffs continued to decline to move to said premises.

The respondents contend that plaintiffs' present residence is unsafe. It is unheated and in disrepair. Plaintiffs are the only tenants left at 108 Wildey Street and it is impossible to maintain them in a healthy condition.

The complaint in this action for a preliminary and permanent injunction and a declaratory judgment was filed on September 28, 1971. Plaintiffs seek injunctive relief requiring that the defendant Agency be restrained from harassing the plaintiffs to accept substandard housing and be enjoined from proceeding to evict the plaintiffs from their present premises; requiring that all the defendants proceed to implement applicable Federal regulations to provide adequate and safe housing for the plaintiffs and others in their class; to require the effectuation of hearing procedures before any sanctions are imposed for the refusal to accept relocation housing where objections are lodged as to its adequacy. They also seek the convening of a three-judge statutory court in order to pass upon the constitutionality of 42 U.S.C. § 1465(e) and HUD regulation 24 C.F.R. § 41.11(c), which provide that determinations of local agencies concerning eligibility or ineligibility for relocation *financial assistance* are not subject to review by a Court or other officer; annulling the determination by defendants that plaintiffs had lost their relocation rights; and determining this action to be a valid class action pursuant to Rule 23 of the Civil Procedure.

By order to show cause dated October 1, 1971, the plaintiffs then moved as follows: (1) for an order convening a three-judge court, pursuant to 28 U.S.C. §§ 2282 and 2284, to enjoin preliminarily and permanently the operation and enforcement of 42 U.S.C. § 1465(e); (2) for a preliminary injunction under Rule 65 (F.R.Civ.P.) restraining defendants TURA and Brown (hereafter collectively referred to as the "local defendants") from imposing or threatening any sanction such as removing plaintiffs from TURA's relocation workload or withdrawing from plaintiffs their priorities for admission to public or middle-income housing, on the grounds that plaintiffs had refused relocation housing, without first giving plaintiffs written notice of the reasons for such sanctions and an opportunity to have an evidentiary-type hearing; from determining plaintiffs to be ineligible for relocation financial assistance and from evicting the plaintiffs without first affording them adequate notice and hearing; and from illegally coercing plaintiffs to accept any particular relocation housing; and (3) for a preliminary injunction mandating the United States Department of Housing and Urban Development (hereinafter "HUD"), George Romney, as Secretary of HUD, and S. William Green, as Regional Administrator of HUD (hereafter collectively referred to as the "federal defendants"), to maintain surveillance of the local defendants, to require them to comply

with Federal relocation laws and regulations, and to promulgate regulations affording persons displaced by urban renewal activities the rights to notice and an evidentiary-type hearing before any sanctions are imposed on the displacees for refusal to accept offered relocation housing.

■ Mrs. Barnes, as a person about to be displaced by an Urban Renewal project, has standing to sue in order to contest her relocation. See Norwalk CORE v. Norwalk Redevelopment Agency, 395 F.2d 920, 936 (2 Cir. 1968). There the Court of Appeals for the Second Circuit specifically ruled "that judicial review of agency action under section 105(c) of the [Housing] Act [of 1949, 42 U.S.C. 1455(c)] * is available to displacees." (That particular section of the Act, as distinguished from § 1465(e), has no specific provision making agency determination final or barring judicial review.) The *Norwalk* case involved a major claim of official discrimination against "Negro and Puerto Rican displacees" in the relocation plan of the South Norwalk Renewal project. It concerned a massive constitutional attack on a far-reaching plan which affected the most fundamental of constitutional rights, the right to be free of governmental activity which supports discrimination based on race or color. There was in the *Norwalk* case, this Circuit held, a clearly justiciable controversy, as well.

The constitutional basis for relief cannot be as firmly grounded when there is no element of unequal treatment of persons, whether for racial or any other reasons. In the case at bar, the papers do not reveal whether Mrs. Barnes is a black or a white person, nor is any issue

tendered on that score. The claim is simply that Mrs. Barnes has been assigned temporary relocation in an apartment which is unsuitable for failure to meet the standards of the Act ("decent, safe, and sanitary"), and that proper administrative procedures for contesting the agency action in selecting the apartment for temporary relocation are missing.

This Circuit in *Norwalk* has sounded a warning in this field. After its statement that judicial review of agency action under § 105(c) is available to displacees, the Court went on to say:

"This does not mean, of course, that the courts are to intervene in relocation activities at the behest of every displacee disappointed in his relocation. Familiar doctrines limit the occasions on which particular judicial remedies, if any, are appropriate. In determining whether there has been compliance with section 105(c) of the Act, courts will evaluate agency efforts and success at relocation with a realistic awareness of the problems facing urban renewal programs. Objections by individual displacees based on too literal an interpretation of the Act's standards could unnecessarily interfere with programs of benefit to the entire community." 395 F.2d at 937.

Here we have a building ready for demolition in which the plaintiffs Mrs. Barnes and her son are the only tenants remaining. They face eviction for failure to accept the apartment tendered them for use as temporary quarters. Mrs. Barnes does not contend that the Federal District Judge should inspect the premises, or even determine, without inspection, whether it is "decent, safe,

---

* Section 105(c), as amended, provides in relevant part: "There shall be a feasible method for the temporary relocation of individuals and families displaced from the urban renewal area, and there are or are being provided, in the urban renewal area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the individuals and families displaced from the urban renewal area, decent, safe, and sanitary dwellings equal in number to the number of and available to such displaced individuals and families and reasonably accessible to their places of employment." 42 U.S.C. § 1455(c) (1).

and sanitary." She simply says that she has no redress against what she deems to be arbitrary and unreasonable action on the part of TURA, condoned by HUD. Her complaint is that she is being put into an improper apartment, but the relief she seeks is strictly procedural. She wants a method to be mandated by the Court which would provide an administrative remedy consonant with due process prior to eviction: notice, hearing, confrontation, assistance of counsel and a right of appeal.

In the view of this Court, since the plaintiffs are correct that actions pursuant to § 105(c) are subject to judicial review, the displacee should, under common standards, have somewhere to go with her protest in an administrative agency before the courts are asked to intervene. For herself, aside from the class she seeks to represent, I am constrained to hold that she has standing to sue and that she presents a justiciable controversy—not because the proposed apartment is unfit, but because she has no adequate procedural relief. While the State Court, in eviction proceedings, might consider her defense based on the inadequacy of the substitute temporary quarters provided, that is no answer to the lack of procedure for relief in the agency itself. See Escalera v. New York City Housing Authority, 425 F.2d 853, 866 (2 Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

The Government, in effect, pleads confession and avoidance. The Legal Aid Society of Westchester by this action may well have triggered the reform it seeks and with which this Court agrees. The October 21, 1971 affidavit of Curnell A. Thompson, Regional Relocation Advisor for Region II of HUD tells us:

"31. Regulations implementing Section 105(c) of the Housing Act of 1949 (42 U.S.C. § 1455(c)) are now being drafted by HUD to establish a procedure by which persons displaced by urban renewal activities may challenge the adequacy of relocation housing, both temporary and permanent, afforded to them by LPAs [Local Public Agencies]. These regulations will take effect within sixty (60) days and will be mandatory upon all LPAs. They will apply to all persons displaced from urban renewal areas after their effective date.

32. The procedure contemplated will be in three steps. The first step would consist of the filing with the LPA of a written complaint setting forth the inadequacies of the relocation housing offered to the displacee. The LPA then will be required to investigate the complaint and render a written decision as to whether the relocation housing afforded the displacee meets the standards for relocation housing set forth in Section 105(c) of the Housing Act of 1949, as amended (42 U.S.C. 1455(c)).

33. The decision of the LPA will be appealable to the Regional office of HUD which would investigate the complaint de novo and render its decision in writing. The decision of HUD's Regional office will be appealable to the Central Office of HUD in Washington, D. C. A determination by the Washington office of HUD would constitute the final agency action and would be subject to judicial review."

While this Court may not render advisory opinions, it believes that the proposed Regulation may go far enough in satisfaction of procedural due process requirements to make the class action moot with respect to eviction and relocation. So far as Mrs. Barnes herself is concerned, however, the regulation, not yet effective, does not help her to resist eviction and relocation in an "unsatisfactory" location.

Thus, the class can wait. Mrs. Barnes cannot. With regard to her, however, the Court must heed the language of Judge Smith in *Norwalk* and recognize that "the courts are [not] to intervene in relocation activities at the behest of every displacee disappointed in his relocation" (395 F.2d at 937).

I am convinced from the papers that Mrs. Barnes is living in an unsafe building without heat and that her own health and her son's are being endangered. There is no convincing evidence that her new temporary quarters are worse than her old quarters have become. It would do her little good if this Court stayed her eviction so that she might become a test case. On practical grounds, I hold that an injunction will not lie on her behalf to restrain her eviction, for such "relief" might well be fatal to her. If the State Court fails to evict her until the new HUD regulations become effective, she may resort to their procedures. If she is evicted before that event, I am constrained to hold that a preliminary injunction cannot issue where there is no probability of success for her efforts to permanently enjoin her eviction. If she gets her hearing it is true that the agency might rule that her new temporary quarters are inadequate, but it could hardly rule that she may stay in her present sorry surroundings. Moreover, she has made no showing that denial of preliminary relief would cause her irreparable harm—quite to the contrary. Finally, HUD has already taken an interest and has supervised repairs in her case, and she is on a priority list for better housing.

The preliminary injunction to stay eviction is denied for the reasons stated.

The particular injunction requested against eviction, it should be noted, does not call for a three-judge court since it does not seek to restrain the operation and enforcement of an allegedly unconstitutional Federal statute.

Decision on the Barnes' motions to convene a three-judge court and to enjoin preliminarily local and federal officials from various actions relating to financial assistance, rather than the commencement of eviction proceedings, is reserved, pending this Court's decision on the motion of Marie Smith to intervene in this case.

The foregoing shall constitute the Court's findings of fact and conclusions of law under Rule 52(a) of Fed.R.Civ.P.