Ollie **BARNES** et al., Plaintiffs,

v.

**TARRYTOWN URBAN RENEWAL AGENCY** et al., Defendants.

No. 71 Civ. 4243.

United States District Court,
S. D. New York.

Jan. 31, 1972.

The Legal Aid Society of Westchester County, White Plains, N. Y., for plaintiffs by Martin A. Schwartz, John T. Hand, Norman B. Lichtenstein, White Plains, N. Y., of counsel.

Kreindler, Relkin, Olick & Goldberg, New York City, for defendants Tarrytown Urban Renewal Agency and Raymond M. Brown by Arthur S. Olick, New York City, of counsel.

Orange Legal Services Project Inc., Middletown, N. Y., for plaintiff-intervenor by Dennis T. Barrett, Middletown, N. Y., of counsel.

Whitney North Seymour, Jr., New York City, U. S. Atty., for defendants Dept. of Housing and Urban Development, George Romney, as Secretary, and S. William Green, as Regional Adminis-

trator by Milton Sherman, New York City, of counsel.

GURFEIN, District Judge.

This action was originally brought by Mrs. Ollie Barnes against Tarrytown Urban Renewal Agency (TURA), U. S. Department of Housing and Urban Development (HUD) and various officials, seeking an injunction to prevent her eviction from her living quarters because of urban relocation requirements. She also sought [1] the convening of a three-judge court to pass on the constitutionality of 42 U.S.C. § 1465(e) and HUD regulation 24 C.F.R. § 41.11(c), which provide that determinations of state agencies or any redetermination by HUD concerning eligibility for relocation financial assistance are not subject to review by a court or other officer. By opinion of November 16, 1971, 338 F.Supp. 257, I denied the injunction against her eviction for reasons unnecessary to repeat.

I *expressly reserved decision on the issue of relocation financial assistance.* However, the defendants had argued that since the plaintiff, Mrs. Barnes, had not yet been relocated and had not yet applied for "financial assistance," she lacked standing to attack the statute as unconstitutional with respect to its procedures relating to financial assistance. To avoid dismissing the action for lack of a representative of the class affected, since the constitutional issue was serious, I permitted Marie Smith, who had been displaced by the Newburgh Urban Renewal Agency (NURA), to intervene in the class action and also permitted NURA and its Executive Director to be added as parties-defendant. That order was signed January 6, 1972.

On October 18, 1971, Mrs. Smith was displaced from her apartment by NURA and moved to adequate housing. That Agency paid Mrs. Smith's expenses for moving to her present apartment. Mrs. Smith informed the Agency several times that she was and would continue to be unable to work due to a physical illness. Despite this, NURA refused additional relocation payments to which Mrs. Smith claims she is entitled under 42 U.S.C. § 1465 because of her handicapped condition. The Agency refused such payments in a letter, written by its Executive Director, Jack Present, which stated only the conclusion—that Mrs. Smith was "not handicapped." On October 28, 1971, Mrs. Smith attempted to have the Agency reconsider her request for additional relocation payments. On that date, she visited the NURA office and spoke to Mr. Jack Nolan, Relocation Director of NURA. Mr. Nolan refused to reconsider the denial of relocation payments. NURA has no procedures for notice and hearing by which displaced families and individuals such as Mrs. Smith may seek to contest the denial of relocation financial assistance.

■■ It is apparent, therefore, that Mrs. Smith has standing to attack, as she does, the constitutionality of 42 U.S. C. § 1465(e), and to seek, as she does by order to show cause, a three-judge court [2] for this purpose and preliminary injunctions to restrain the local and the federal defendants from determining her eligibility, or that of members of her class, for relocation financial assistance without notice, hearing and judicial review. As representative of a class, she also has standing to ask the Court, as she does, to require the federal defendants to promulgate rules and regulations providing for adequate notice and hearing, as well as judicial review with respect to relocation financial assistance.

---

1. The full scope of the relief sought in her order to show cause of October 1, 1971 is described in *my opinion of November 16, 1971.*

   However, Mrs. Barnes has now been relocated and she, therefore, no longer presses for the preliminary relief regarding re-location housing. Accordingly, the remaining issues raised by the Barnes' show cause order are fully treated in this disposition of Smith's order to show cause.

2. This is sought under 28 U.S.C. §§ 2282, 2284.

## APPLICABLE STATUTES, REGULATIONS AND RULINGS

### I

The complaint seeks to enjoin an Act of Congress, *viz.*, Section 114(e) of the Housing Act of 1949, as amended, 42 U. S.C. § 1465(e), on the ground that it does not comply with the due process clause of the fifth amendment by failing to provide for notice, hearing or judicial review upon determinations of eligibility for relocation financial assistance. Section 1465(e) reads as follows:

"(e) Rules and regulations; finality of administrative decisions; promptness of payments.

The Secretary is authorized to establish such rules and regulations as he may deem appropriate in carrying out the provisions of this section and *may provide in any contract with a local public agency, or in regulations promulgated by the Secretary, that determinations of any duly designated officer or agency as to eligibility for and the amount of relocation assistance authorized by this section shall be final and conclusive for any purposes and not subject to redetermination by any court or any other officer.* Such regulations shall include provisions to assure that relocation payments, as authorized by this section, shall be made as promptly as possible to all families, individuals, business concerns, and nonprofit organizations found to be eligible for such payments by reason of their having been displaced from property in the urban renewal area, without regard to any subsequent proceedings, determinations, or events relating to such property which do not bear upon whether such displacement in fact occurred." (emphasis added)

Pursuant to the power conferred upon him, the Secretary of HUD has issued a regulation which makes the local determination or any redetermination by HUD final and conclusive. This appears in 24 C.F.R. § 41.11(c) (1971) and reads:

"(c) *Action on claim—finality.* The agency is initially responsible for determining the eligibility of a claim for, and the amount of, a relocation payment and shall maintain in its files complete and proper documentation supporting the determination. The determination on each claim shall be made or approved either by the governing body of the agency or by the principal executive officer of the agency or his duly authorized designee. The determination by the agency or any redetermination by HUD shall be final and conclusive with respect to the rights of any site occupant, and not subject to redetermination by any court or any other officer. Subject to the requirements of this paragraph (c), the agency may permit a third-party contractor responsible for relocation activities to examine and recommend action on a claim and to disburse funds in payment of a claim which has been approved by the agency."

Thus, the statutory framework makes no provision for notice and hearing and, moreover, precludes judicial review.

### II

This simple statutory picture was clouded by the passage on January 2, 1971 of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Uniform Act), 42 U.S. C. §§ 4601 et seq.; 84 Stat. 1894.

Section 220(a) (5) of the Uniform Act repeals 42 U.S.C. § 1465. But it is not an outright repeal. The effective date of that repeal is delayed in accordance with the terms of Section 221 of the Uniform Act, which reads in part:

"(b) Until July 1, 1972, sections 210 and 305 shall be applicable to a State only to the extent that such State is able under its laws to comply with such sections. After July 1, 1972, such sections shall be completely applicable to all States.

(c) The repeals made by paragraphs (4), (5), (6), (8), (9), (10), (11), and

(12) of section 220(a) of this title and section 306 of title III shall not apply to any State so long as sections 210 and 305 are not applicable in such State." [3]

Section 210 of the Uniform Act (42 U.S.C. § 4630) [4] forbids the head of a federal agency from approving "any grant to, or contract or agreement with, a State agency" for a relocation project resulting "in the displacement of any person" and involving federal financial help, unless he receives satisfactory assurances from the State agency that there will be compliance with the Uniform Act's standards for relocation assistance.

The question arises, therefore, whether 42 U.S.C. § 1465 is still law so far as the displacees of the Tarrytown and Newburgh Agencies are concerned. Put another way, can these persons receive adequate procedural due process in spite of the provisions of 42 U.S.C. § 1465?

The issue turns on when the repeal of 42 U.S.C. § 1465 is effective in New York State and, more particularly, in TURA and NURA areas—Tarrytown and Newburgh.

The date of the enactment of the new Uniform Act was January 2, 1971, and the question quickly arose as to whether the provisions of the new Act applied to contracts made by HUD with various State agencies before the date of enactment; and, indeed, whether the Federal Government could, constitutionally, by unilateral action amend pre-existing contracts with State agencies. Specifically, the question which arose was whether these State agencies had to comply with the provision calling for sharing of relocation costs with the Federal Government pursuant to § 211(a) of the Uniform Act (42 U.S.C. § 4631(a)).

The matter was resolved for HUD by an opinion of the Comptroller General of the United States, dated November 5, 1971, in which he ruled that these cost-sharing requirements would not apply to federally-assisted projects under contract with State agencies *prior* to January 2, 1971, the effective date of the Act. He went on to say:

"Although, under section 221(b), the effective date of sections 210 and 305 of the Act may be delayed until July 1, 1972, to the extent that any State is unable under its laws to comply with such sections, we believe, under our interpretation of the Act, that there would be no legal barrier to compliance in any State with respect to *any contract executed with HUD before January 2, 1971,* and that under section 221 (a) *the Act became effective as to such contracts on the date of enactment, January 2, 1971."* (emphasis added)

On November 8, 1971 HUD indicated that it would follow the Comptroller General's opinion and that implementing regulations will be issued "in the near future."

If the Comptroller General and HUD, by its acceptance of his ruling, are right, then Section 1465 is not presently in effect with respect to contracts antedating January 2, 1971. Both the TURA and the NURA contracts were entered into before that date. In other words, once it was ruled that such State agencies were not subject to the cost-sharing requirements, all effective barriers to compliance with Section 210 were removed and consequently Section 1465 was repealed.

It is true that the Attorney General of New York gave an opinion on November 30, 1971 that under present New York law, State agencies are without power to pay a share of the moving expenses and replacement housing costs for urban renewal projects (see N.Y. General Munici-

---

3. Paragraph "(5)" referred to in (c) repeals Section 114 of the Housing Act of 1949 (42 U.S.C. § 1465), the section here under attack.

4. Section 305 (42 U.S.C. § 4655) is similarly worded, but concerns "acquisition of real property" rather than "displacement." No separate arguments as to the present inapplicability of § 305 have been tendered.

pal Law §§ 503, 554 (McKinney's Consol. Laws, c. 24, 1965)), and hence, cannot comply with the new Uniform Act. That opinion appears in N.Y.L.J., Jan. 6, 1972 at 3, cols. 4–5. Legislative action is required and is under way in the State Legislature.[5] But the statutory limitation in New York has been made irrelevant to contracts entered into before January 2, 1971, by the acquiescence of HUD in the Comptroller General's opinion.

Before we reach this conclusion, however, we must consider the arguments advanced by the plaintiffs.

■ First, the plaintiffs argue that repeal will not be effected under § 221 (c) until § 210 and § 305 are applicable in full to the entire State, not merely to some agencies within the State, like TURA and NURA.[6] While such a reading is literally possible, I do not so interpret § 221(c). I believe it more logical to read the mechanism of § 221(b), which provides for applicability by degrees, into § 221(c), which would thus provide for a concomitant repeal by degrees. This accords with the evident congressional intent to hasten the effective date of this Act. Moreover, my interpretation accords with that of the Comptroller General and of HUD, who have already decided that it need not be "all or nothing" so far as a particular state is concerned. Such administrative interpretation is obviously entitled to some weight.

■ Second, the plaintiffs argue that the applicability of § 210 turns on when a federal grant is made to the State agency, not when the two enter into the contract. Therefore, the argument runs, § 1465 still applies to any grant, under which displacement results, made after January 2, 1971. I do not agree. The "grant" is made pursuant to the "contract." If cost-sharing is not required by the contract, it will not be imposed as a condition of the grant. So the Comptroller General has ruled, and HUD has acquiesced.

■ Third, the plaintiffs claim that extension of the benefits of the Uniform Act to displacees under pre-January 2, 1971 contracts, and denial of them to displacees under contracts executed after that date, is illogical and unfair, as well as a frustration of the intention of the Congress. In the first place, since the intent of the Congress was to speed the effective date of the Uniform Act, any step in that direction—as here, where the Comptroller General determined that some displacees, previously thought not to be covered, were indeed within the Act—can hardly be seen as a frustration of congressional intent. At any rate, plaintiffs are not in a position to argue inequity, since they fall in the privileged class now covered by the Uniform Act. Finally, any inequity that has resulted from the Comptroller General's opinion would be poorly cured by rolling back the coverage of the Uniform Act. Much better would be an extension of its benefits to displacees under post-January 2, 1971 contracts. In fact, HUD has agreed to make the new administrative review procedures, when formulated, available

---

5. Evidently repeal of the barriers to compliance has already been requested of the New York State Legislature.

6. Some support for this position can be had from House Report No. 91–1656, which is set out in U.S.Code Cong. & Admin.News., 91st Cong., 2d Sess. 5850, at 5870 (1970) and which reads:

"Subsection (c) provides that the repeals by specified paragraphs of section 220(a) and by section 306, relating to present relocation assistance programs and certain real property acquisition practices and payments in Federal and Federal financially assisted programs, shall not apply to any State so long as the bill is not fully applicable in such State."

However, the very next sentence of the Report indicates a congressional intent to implement the Act as soon as possible:

"The Committee believes that there is no justification for any delay in the effective date of the bill except as required by State law."

The requirement of State law is limited, as we have seen, to post-January 2, 1971 contracts.

to this class of displacees, even though this is not literally required under the Uniform Act.

Fourth, the plaintiffs feel that the Comptroller General's opinion cannot be interpreted to mean that New York agencies operating under pre-January 2, 1971 contracts are now able to comply, because, since then, the State Attorney General has ruled that under New York law the State agencies cannot participate in cost-sharing under the Uniform Act, and the ruling of the Attorney General made no reference to the January 2, 1971 cut-off date. However, as explained above, the whole rationale of the Attorney General was premised on the existence of a cost-sharing requirement, which he saw as impermissible under New York law. Now that the Comptroller General has said that there is no such requirement for certain agencies, the Attorney General's conclusion cannot be read to apply to these agencies.

Fifth, the plaintiffs, with more merit, argue that § 210 cannot be fully applicable until a certain statutory prerequisite has been met, viz., the actual receipt of § 210 assurances from the local agencies.[7] These in fact have neither been received by HUD nor yet requested. Although this argument is theoretically correct, its force is substantially dissipated when viewed in the light of practicality. There is no reason to doubt that these assurances will be forthcoming, since the availability of substantial federal aid rests thereon, and the assurances need contain no cost-sharing by the State for pre-January 2, 1971 contracts.

In conclusion, then, all practical obstacles to the repeal of § 1465 in New York, as to agencies operating under contracts executed before January 2, 1971, have been removed. The only remaining steps to applicability of §§ 210 and 305 are virtually pro forma. However, as to agencies operating under post-January 2, 1971 contracts, § 1465 will remain in effect until the earlier of two events: (1) July 1, 1972, or (2) the provisions of New York law which preclude compliance with the Uniform Act are repealed, and assurances of compliance are given.[8] Since the availability of federal funds after July 1, 1972 absolutely depends on the repeal of these State laws, their repeal prior to that date is all but certain.

## DISPOSITION

The question still remains, however, assuming that the negative procedural limitations of 42 U.S.C. § 1465 have fallen by the wayside because of an effective repeal, what procedural provisions have come into effect in their stead. This, in turn, raises two questions: (1) whether the new statutory provisions for procedural relief are con-

---

7. Plaintiffs also point to § 211(c) (42 U.S.C. § 4631(c)) of the Uniform Act. However, this Court does not read that as a prerequisite to the applicability of §§ 210 and 305, which is all that matters under § 221.

8. This determination of effective date for post-January 2, 1971 contracts does not constitute a holding. Instead, for the purposes of this opinion I adopt this view as the one being most favorable to the plaintiffs. As indicated below (see note 11 infra), the assumedly greater delay in effective date for agencies operating under post-January 2, 1971 contracts, however, does not affect the decision in this case, because the present plaintiffs lack standing to object to this delay or to challenge § 1465 during this delay.

At any rate, HUD does not accept this determination of effective date. It argues that all State agencies which executed contracts with HUD after January 2, 1971 also rendered the requisite statutory assurances. HUD does not believe that the State Attorney General's opinion of November 30, 1971, which HUD sees as merely advisory, acted to invalidate these assurances. Since November 30 HUD has executed no new contracts in New York, and will not do so until the barriers to compliance raised by the Attorney General have been eliminated. Thus, it is the position of HUD that, as to all New York agencies operating under post-January 2, 1971 contracts, the Uniform Act is fully applicable and has always been so.

stitutional; and (2) whether they are sufficiently effective in the case of Mrs. Smith to afford her due process. We may avoid the first question on the ground that there is no attack on the new Uniform Act on constitutional grounds before the Court. The attack is limited solely to the constitutionality of 42 U.S.C. § 1465.[9] The second question poses more difficulty, however, for a failure to substitute an adequate procedure for an invalid procedure leaves the plaintiff in a judicial limbo. We are assured that HUD is busily engaged in promulgating regulations under the new Uniform Act. The promulgation of such regulations as a *sine qua non* to procedural due process is, however, not a matter for a three-judge court, especially since the statute itself is not here under attack.

Since Mrs. Smith has been getting what must appear to her to be a runaround from officialdom, she is entitled to some relief.

■ The new Uniform Act provides for a grievance procedure in the following terms (§ 213; 42 U.S.C. § 4633):

"(b) The head of each Federal agency is authorized to establish such regulations and procedures as he may determine to be necessary to assure—

\* \* \*

(3) that any person aggrieved by a determination as to eligibility for a payment authorized by this Act, or the amount of a payment, may have his application reviewed by the head of the Federal agency having authority over the applicable program or project, or in the case of a program or project receiving Federal financial assistance, by the head of the State agency.

(c) The head of each Federal agency may prescribe such other regulations and procedures, consistent with

the provisions of this Act, as he deems necessary or appropriate to carry out this Act."

Under the Uniform Act the following regulation, appearing in 36 Fed.Reg. 8798 (1971), has already been promulgated:

"§ 42.190 Appeals procedure—grievances.

Any person aggrieved by a determination as to eligibility for, or the amount of, a payment under the regulations in this part may have his claim reviewed or reconsidered by the head of the State agency or his authorized designee, in accordance with such procedures as the State agency shall have established for such review or reconsideration. Where such person is not satisfied by such review or redetermination, he is entitled to redetermination of his claim by HUD. Any person or class of persons may similarly seek review and revision of any schedules with respect to payments under the regulations in this part."

Further details of these grievance procedures are currently being drafted in Washington, and will purportedly establish a three-step procedure for pursuing relief at the State agency level, the Regional Office of HUD and the Central Office of HUD.

In summary, the administrative review procedure will be expanded under the Uniform Act, and the bar to judicial review will have been repealed.

This Court need not put a time limit on the promulgation of adequate regulations. It is assumed that HUD will act with promptness to carry out the congressional mandate. If there should be unreasonable delay, or if the regulations produced are inadequate, this complaint may be amended to cover the situation.

■ In the meantime, the only person suffering from the delay, as far as

9. The plaintiffs also seek to challenge the lack of notice and hearing under 42 U.S.C. § 1455, dealing with eligibility for safe, decent and adequate relocation housing. Their aim is to have the three-judge court consider this as a pendent claim to their attack on § 1465. Accordingly, the success of this aim rests on the success of their request for a three-judge court to consider § 1465.

the Court knows, is Mrs. Smith. She should be permitted to by-pass State agency procedures, since they apparently do not yet exist, and ask for a redetermination of the decision of the State agency directly from HUD (36 Fed. Reg. 8798 (1971)). HUD should inform Mrs. Smith to which official she should address her appeal.[10]

Finally, I must hold that, as to the class of plaintiffs who are in areas such as TURA and NURA operating under pre-January 2, 1971 contracts,[11] their attempt to enjoin the enforcement of 42 U.S.C. § 1465 is mooted by the subsequent events and interpretations mentioned in this opinion. Three-judge court statutes place a heavy burden on the federal judiciary; C. Wright, Law of Federal Courts 189 (2d ed. 1970). And they are "an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). See Board of Regents v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972).

As I have intimated, the plaintiffs likely raised enough doubt about the constitutional validity of 42 U.S.C. § 1465 under Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), to have justified, on the merits, the convening of a three-judge court.[12] But the matter has become moot as to this class of plaintiffs. The procedural provisions of the Housing Act of 1949 have been effectively repealed, so far as these plain-

tiffs are concerned. There is, in the strict sense, no case or controversy here with respect to the repealed statute. Mootness is, in any event, sufficient ground for denying the convocation of a three-judge court. Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969); Cook v. Board of Education, 424 F.2d 995 (2 Cir. 1970); Cherry v. Postmaster General, 332 F.Supp. 785 (S.D. N.Y.1971), and cases there cited.

Moreover, the willingness of the Secretary to have the new regulations apply even to situations technically still governed by the old statute goes a long way to dilute the problem. If the new regulations prove sufficient for procedural due process, the victory sought in this action will have been won. As a practical matter, it would be a waste of time and an ineffectual exercise to call a three-judge court. See Cook v. Board of Education, *supra*. Furthermore, it is more orderly procedure, and more consistent with the separation of powers, for the Executive Branch to formulate its own rules and regulations in the first instance, rather than to have them mandated by a court.

Although the request for a three-judge court is denied, the Court will not dismiss the complaint (cf. Utica Mutual Ins. Co. v. Vincent, 375 F.2d 129 (2 Cir.), cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967)). Leave to amend to the extent indicated in this opinion has been granted. No temporary injunction will issue, but the Secretary

---

10. By affidavit, HUD's Assistant Secretary for Community Planning and Management has assured the Court that informal administrative review, conforming as nearly as possible to the grievance procedure now envisaged for the new regulations that will implement the Uniform Act, will be employed pending publication of that proposed grievance procedure.

11. It should be once again noted that as to these plaintiffs § 1465 will be repealed upon receipt of the statutory assurances. As to those displacees under post-January 2, 1971 contracts, repeal *might* not be as imminent, but in no case can repeal be delayed beyond July 1, 1972.

See note 8 *supra*. While these latter displacees thus might have a more weighty counter-argument to mootness, the present plaintiffs lack standing to represent them. See Hall v. Beals, *infra*.

12. As we have seen, 42 U.S.C. § 1465 makes no provision for notice and hearing. Moreover, the Secretary may provide "that determinations of any duly designated officer or agency as to eligibility for and the amount of relocation assistance authorized by this section shall be final and conclusive for any purposes and not subject to redetermination by any court or any other officer."

is ordered to afford Mrs. Smith adequate review of the decision of NURA denying her additional relocation payments.

The above constitutes my findings of fact and conclusions of law under Fed.R. Civ.P. 52.

It is so ordered.