**Charles CLAY, Plaintiff,**

v.

**Patricia HARRIS, et al, Defendants.**

**Civ. No. H 78–174.**

United States District Court,
N.D. Indiana,
Hammond Division.

April 4, 1984.

---

**1315**

Ned M. Berbeco, Hammond, Ind., for plaintiff.

Julian B. Allen, Gary, Ind., for Farquhar and Marr.

R. Lawrence Steele, Jr., U.S. Atty., Hammond, Ind., for Patricia Harris.

Charles A. Ruckman, Gary, Ind., for Williams and City of Gary.

## ORDER

MOODY, District Judge.

This matter is before the Court on Plaintiff's Petition and Supplemental Petition for an award of attorney's fees and costs pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. The Act allows the Court, in its discretion, to award reasonable attorney's fees to the prevailing party in an action based on 42 U.S.C. § 1983 and Mr. Clay claims attorney's fees from two of the defendants, the City of Gary and the Gary Redevelopment Commission.[1] The Petition and Supplemental Petition are DENIED.

### PROCEDURAL HISTORY

On May 16, 1978, plaintiff Charles Clay filed a Complaint and Motion for Preliminary Injunction in the United States District of Indiana, Hammond Division. The plaintiff contended that the defendants violated his rights under the Fifth, Sixth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, 42 U.S.C. § 1441 *et seq.*, and particularly 42 U.S.C. § 1455(c). Forty-two U.S.C. § 1455(c) provides for temporary relocation of families and individuals displaced by ur-

---

1. In the spirit of *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Court will assume that Mr. Clay claims only for reasonable fees related to his litigation against the Gary Redevelopment Commission and the City of Gary. Fees related to his complaints against Patricia Harris as Secretary of HUD, James E. Armstrong as Area Director of HUD, and Melvin Farquhar as Director of the Gary Relocation Office are not the subject of the plaintiff's motion. This approach is necessary in part since 42 U.S.C. § 1988 does not operate as a waiver of sovereign immunity by the United States. *NAACP v. Civiletti,* 609 F.2d 514 (D.C.Cir.1979). By claiming fees from only municipal defendants, Mr. Clay avoids the higher standard of the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (EAJA) which provides fees to prevailing parties "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). To allow Mr. Clay to indirectly obtain reimbursement for expenses related to the federal parties, when his claim's success might be attributed only to the lower statutory standard, would unduly penalize the municipal defendants for their nexus to federal agencies.

ban renewal projects.[2] The statute also sets out the procedures for approval of the urban renewal plan.

Mr. Clay's petition alleges that the defendants agreed to his relocation from 5th Avenue to West 5th Avenue in Gary, Indiana but subsequently failed to assist him in accordance with the statute, and hampered the conduct of his business. The plaintiff claimed damages in a total amount of one million, two hundred thousand ($1,200,-000.00) dollars.

Defendants Melvin E. Farquhar and David W. Marr of the Department of Redevelopment, Gary, Indiana, responded to plaintiff's Complaint and Motion for Preliminary Injunction with a Motion to Dismiss, filed on May 30, 1978. In addition to the jurisdictional arguments in this motion defendants asserted res judicata. Mr. Clay's complaint itself acknowledges that

during the year 1976, and after plaintiff had been notified that the defendants would assist him in relocating his business at the West 5th Avenue location, the defendant, City of Gary, filed a complaint in the Lake Superior Court, Room Number Three, in Cause No. 376–809, in which complaint the defendant City of Gary, asked the court to restrain the plaintiff from continuing to operate his business at the West 5th Avenue location and on December 15, 1976, obtained an order from the said Lake Superior Court ordering the plaintiff herein to cease conducting his business and authorizing the defendant, City of Gary, to haul and carry away plaintiff's materials and business and charge the plaintiff herein for such removal and destruction of his business.

Complaint, ¶ 11, filed May 17, 1978.

Attached to the defendants' Motion is a certified copy of the Lake Superior Court's judgment of October 7, 1976, indicating that Mr. Clay defaulted in the action.

Defendant George Williams of Gary's Department of Development and Planning, and the City of Gary filed a Motion to Dismiss on June 7, 1978, and an Amended Motion to Dismiss on June 23, 1978. These defendants also argued that a portion of the relief sought was barred by res judicata and attached a copy of the Superior Court's order to enforce its judgment, dated December 15, 1976.

Pursuant to discussions between the parties, on June 27, 1978, Mr. Farquhar notified Mr. Clay in writing of his statutory entitlements under the circumstances of this suit. Settlement negotiations were seriously pursued for a time. An agreed Motion for Continuance was filed on November 22, 1978; both Motions to Dismiss were summarily denied by the District Court on March 5, 1979, with reference to settlement possibilities.

The prospect of amicable agreement had faded by October of 1980, when this Court first considered dismissing the case for lack of prosecution. On September 30, 1981, however, the U.S. Magistrate, James T. Moody, recommended that the case be retained on the Court's docket in anticipa-

---

**2.** Section 1455(c)(1) provides in pertinent part: There shall be a feasible method for the temporary relocation of individuals and families displaced from the urban renewal area .... [R]ules and regulations shall require that there be established, at the earliest practicable time, for each urban renewal project involving the displacement of individuals, families, *and business concerns occupying property in the urban renewal area,* a relocation assistance program which shall include such measures, facilities, and services as may be necessary or appropriate in order (A) to determine the needs of such individuals, families, and business concerns for relocation assistance; (B) to provide information and assistance to aid in relocation and otherwise minimize the hardships of displacement ... and (C) to assure the necessary coordination of relocation activities with other project activities and other planned or proposed governmental actions in the community which may affect the carrying out of the relocation program. (emphasis added)

42 U.S.C. § 1455(c)(1).

The provisions of § 1455(c) must be considered in conjunction with those of the Uniform Relocation Assistance and Real Property Aquisition Policies Act of 1970, 42 U.S.C. § 4601 *et seq. Battison v. Niles,* 445 F.Supp. 1082, 1090 (N.D.Ohio, 1977). *See also Barnes v. Tarrytown Urban Renewal Agency,* 338 F.Supp. 262 (S.D.N.Y.1971).

tion of a settlement. An amended consent decree finally closed the litigation on September 7, 1982. A single issue remains before this Court: whether plaintiff is a prevailing party under 42 U.S.C. § 1983 for purposes of an award of attorney's fees under 42 U.S.C. § 1988.

## APPROPRIATE TEST UNDER § 1988

 A "prevailing party" within the meaning of § 1988 must meet the test enunciated by the First Circuit in *Nadeau v. Helgemoe*, 581 F.2d 275, 278 (1st Cir. 1978) and cited approvingly by the United States Supreme Court in *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). *See also Lenard v. Argento*, 699 F.2d 874 (7th Cir.1983); *Crosby v. Bowling*, 683 F.2d 1068 (7th Cir.1982); *Harrington v. DeVito*, 656 F.2d 264 (7th Cir.1981); *Busche v. Burkee*, 649 F.2d 509, 521 (7th Cir.1981). Under the *Nadeau* rationale, "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit." *Nadeau*, 581 F.2d at 278. This entails two separate determinations. The Court must first ascertain whether the plaintiff has demonstrated that his lawsuit was causally related to securing the relief obtained. This is a factual question. The second determination is legal: "If it has been judicially determined that the defendant's conduct, however beneficial it may be to plaintiff's interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." *Nadeau*, 581 F.2d at 281 (citations omitted). The plaintiff is not barred from recovering attorney's fees because he prevailed through settlement rather than through litigation, *Maher v. Gagne*, 448 U.S. 122, 129, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980), or because there was no finding of a violation of plaintiff's constitutional rights. *Id.* A party need not prevail on every issue to be awarded attorney's fees under § 1988. *Larsen v. Sielaff*, 702 F.2d 116, 117 (7th Cir.1983); *Busche*, 669 F.2d at 521. However, where the plaintiff has achieved only limited success, the district court should award only that amount of fees that is reasonably related to the results obtained. *Hensley v. Eckerhart*, —— U.S. ——, 103 S.Ct. 1933, 76 L.Ed.2d 40, 55 (1983). The court should, for example, identify and exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. *Id.* at ——, 103 S.Ct. at 1940, 76 L.Ed.2d at 51. *See also Copeland v. Marshall*, 641 F.2d 880, 881 (D.C.App.1980).

 Once the prevailing party is identified, attorney's fees may nevertheless be denied because of "special circumstances." *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). This is a narrow exception. The burden of demonstrating the existence of special circumstances is on the defendant, *Williams v. Miller*, 620 F.2d 199, 202 (8th Cir.1980); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 38 (2d Cir.1978), and "special circumstances" are present only in unusual cases. *See Riddell v. National Democratic Party*, 624 F.2d 539, 544–45 (5th Cir.1980). The special circumstances exception was deemed appropriate, for example, where plaintiff "prevailed" but an award of attorney's fees would encourage numerous trivial lawsuits challenging ancient municipal ordinances. *Naprstek v. Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977). *See also Crosby v. Bowling*, 683 F.2d 1068, 1071 (7th Cir.1982) (discussing scope of *Naprstek* ruling).

The plaintiff here must prevail within the meaning of *Nadeau*, withstand the reasonableness tests of *Hensley*, and surmount the defendants' contention of "special circumstances" to qualify for a fee award under § 1988.

### Prevailing Party

1. Causal Connection

 *Nadeau* initially requires that the lawsuit be causally related to the relief obtained. The Consent Decree before the Court states that plaintiff continues to maintain the validity of his claims, though agreeing to settle the case. Similarly, the

defendants adhere to their position despite the Consent Decree.[3]

To determine causality, it is appropriate to look at the "before" and "after" of the lawsuit. *See Citizens Coalition v. Euclid,* 717 F.2d 964 (6th Cir., 1983). This suit arose when Gary's Department of Redevelopment acquired certain real estate owned by the plaintiff and located within an urban renewal area. The uncontroverted affidavit of Melvin E. Farquhar, Amended Motion to Dismiss, Exhibit "A", filed on June 23, 1978, described the scene before the suit was filed:

> Mr. Clay acquired property on West 5th Avenue to relocate his business. Department of Planning and Development indicated that a fence had to be built around property. Mr. Clay was to build a garage and relocation agreed to build the fence around the property at an estimated cost of $23,000. Mr. Clay was told not to do any business at the new location until work was completed and all permits necessary were received. He did not wait. He began moving junk cars into the property.
>
> . . . .
>
> An agreement was reached to have Mr. Clay's property on 5th Avenue cleared of all junk as soon as possible. An auction was scheduled and held . . . . and it was determined that Mr. Clay was to receive $75.00 for each junk car that was to be towed.
>
> . . . .
>
> Mr. Clay refused to allow assigned workers from Paul's Auto Yard to remove anything from his property and hired a lawyer to represent him.
>
> . . . .
>
> Letter was given to Mr. Clay dated May 1, 1978 stating that if he could acquire a site and a license to operate by August 1, 1978 that we were still committed to build his fence as required.

Affidavit of Melvin E. Farquhar, Exhibit "A", Amended Motion to Dismiss, filed on June 23, 1978.

The Status Report of October 6, 1980, indicates that the parties had shifted positions by mid-suit:

> By agreement of the parties, the City of Gary as defendant and the officials of the City of Gary who were named defendants, agreed that pending settlement negotiations, the City of Gary would withhold further action under Cause 376–809 and enforcement of City ordinances against Mr. Clay; and that the Gary Redevelopment Commission would provide Mr. Clay, in writing, his rights in a previous agreement to relocate his business on Fifth Avenue.
>
> . . . .
>
> Defendants City of Gary and its officials indicate that they are still willing to acquire Mr. Clay's property and provide for financial assistance under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (1371.1 revised).

Report of Status of Case, filed October 6, 1980.

The Amended Consent Decree operating as a final judgment in this suit lists the defendants' obligations under that agreement. They include:

1. To assist plaintiff in accordance with the Uniform Relocation and Assistance and Real Property Acquisition Policies Act of 1970;
2. To build a fence to contain plaintiff's business;
3. To assist plaintiff in meeting the expenses of relocation;
4. To improve access to plaintiff's site; and
5. To refrain from enforcing the Lake Superior Court orders.

Amended Consent Decree, filed August 31, 1982, at page 9–10. Both parties agreed to a compensation schedule for plaintiff's junk

---

**3.** According to that document, "[t]he defendants maintain that they have complied with and will continue to comply with the provisions of all applicable provisions of State and Federal Statutes." Amended Consent Decree, filed September 7, 1982, at pages 5–6.

automobiles, and that the plaintiff will clear other salvage materials from his new site. None of the relocation expenses available under statute will be paid out until the cleaning and moving is completed.

Prior to this litigation, Mr. Clay faced an injunction and enforcement order of the Lake County Superior Court. The suspension of that suit was causally related to Mr. Clay's action here. Similarly, the Department's commitment to improve access to plaintiff's new site was apparently caused by the suit at bar; there is no record of such an undertaking prior to the Consent Decree. The financial assistance mentioned in the Decree had already been offered as part of the relocation plan. The Department of Planning and Development had offered to build a fence around Mr. Clay's property as early as 1976. *See* Affidavit of Melvin E. Farquhar, Exhibit "A", filed June 23, 1978. The price offered and accepted for the junk autos was set in 1977, and cannot be said to be causally related to this lawsuit. Finally, the Department's renewed commitment to abide by the Relocation Act is not, given the ample evidence of dialogue between the parties prior to this suit, a victory for which the plaintiff can recover attorney's fees. See *Citizens Coalition for Block Grant Compliance, Inc. v. Euclid,* 537 F.Supp. 422 (N.D.Ohio 1982), aff'd 717 F.2d 964 (6th Cir.1983) (insufficient causal connection found where record indicated HUD's predisposition to comply with urban renewal obligations and suit merely hastened the process). In sum, then, only the defendant's commitments to drop the state court suit and to improve access to plaintiff's new site need be scrutinized under the second *Nadeau* prong.

## 2. Gratuitous relief

The second *Nadeau* requirement is that defendants not have acted gratuitously in granting the relief. The defendants' agreement to drop the enforcement suit is gratuitous as a matter of law. Forty-two U.S.C. § 1456(c)(2) empowers the Secretary of H.U.D. (and his agents) to "foreclose on any property or commence any action to protect or enforce any right conferred upon him by law, contract, or other agreement". 42 U.S.C. § 1456(c)(2). The Gary suit was a proper action, with the City of Gary as representative of the Secretary, brought to enjoin the plaintiff from jeopardizing a validly approved urban renewal project.

Though the Department's commitment to improve access to the plaintiff's new site is related to the defendant's legal obligations under the Act, the plaintiff cannot recover fees on the issue. As a preliminary matter, the plaintiff did not sue to obtain this particular relief; improved access first appears as an issue between the parties in the Consent Decree. More importantly, the access road is one of many "additions, improvements or alterations" which might meet the requirements of the Uniform Relocation Assistance Act. The road is not required by law. What is required is an entire relocation package, and this was presented to the plaintiff long before the instant suit was filed. The access road itself is a discretionary accommodation of plaintiff's demands and so falls outside the *Nadeau* test.

## Special Circumstances

■ The plaintiff here did not prevail on any single claim, and the special circumstances clause is not necessary to resolve this dispute. However, had Mr. Clay prevailed on one or more issues, special circumstances would nevertheless affect the Court's view of a claim for attorney's fees. The relevant circumstances are of two types. First, there are indications in the record that the suit was vexatious, and an award of attorney's fees might unduly encourage such litigation.[4] Secondly, Mr. Clay here attacks the municipal application

---

4. If the plaintiff's case is "frivolous, unreasonable or groundless," *Nadeau,* 581 F.2d at 281, any concessions the defendant may have made by way of settlement may be considered gratuitous. *Citizens Coalition,* 717 F.2d at 966. A special circumstances inquiry is made here as an alternative basis for withholding fees where the suit's frivolity is not clearcut, yet a fee award would be inadvisible.

of laws administered by federal agencies and under federal supervision. By gauging his claim for fees solely at low level administrators, he avoids the higher standard for an award of fees under the EAJA applicable to federal parties. The close connection between the federal and municipal subject matter of this suit suggests that an award of fees is appropriate only if the defendants' position was without substantial justification. *See* 28 U.S.C. § 2412(d)(1)(A).

### 1. Unnecessary Litigation

In *Naprstek v. City of Norwich*, 433 F.Supp. 1369 (N.D.N.Y.1977), the Court found that the special circumstances present in the case would make a fee award to the prevailing parties unjust. *Id.* at 1370. The plaintiffs in *Naprstek* contended that a local juvenile curfew ordinance was unconstitutionally vague because it failed to specify a termination time. The court found that the challenged ordinance was rarely enforced and noted that the constitutional power of the municipality to enact a properly worded curfew was established. *Id.* Further, counsel for the municipality had indicated their willingness to meet with the plaintiff's attorneys to discuss redrafting the ordinance but their offer had been refused by the plaintiffs. Attorney's fees were denied to the prevailing party because an award would have encouraged suits to enforce archaic statutes with the expectation of automatic attorney's fees.

The facts of the instant case present an even stronger argument for application of the special circumstances exception. There is ample evidence that Mr. Clay knew or should have known of his rights and obligations under 42 U.S.C. § 4601 from the first days of this litigation. He had at the very

least been in communication with the Relocation Office from December 19, 1975. *See* Complaint at ¶ 6. There is no evidence that Mr. Clay made any attempt to comply with the Relocation Act prior to his filing.

Judicial action to enforce the statute may or may not have seemed necessary at the outset of this suit. However, a letter dated June 27, 1978, and signed by Mr. Farquhar spells out the statutory provisions and their significance for all parties. *See* Consent Judgment, Defendants' Exhibit "B". That letter was framed in terms of an offer, and held out to Mr. Clay substantially all the legal relief which he might expect in the suit—relief which he ultimately accepted in the Consent Decree. The continuation of the litigation from that point was not necessary to secure the relief.

Though the facts are somewhat different, the same policy as that identified in *Naprstek* is afoot. In both cases, realistic offers of settlement were made early in the case and refused by the respective plaintiffs. Like *Naprstek*, an award of attorney's fees in this case would encourage a fee-conscious plaintiff to refuse compliance with an ordinance, maintain ignorance as to the applicable law, sue the municipal actors to enforce the statute, and refuse to accept offers of compliance which, to all appearances, were made prior to and throughout the litigation. The *Nadeau* test precluded plaintiff's recovery here, but alternatively, this is not a suit where an award of attorney's fees is appropriate.[5]

### 2. Substantial justification

Parties may invoke the provisions of the EAJA when claiming fees from the United States or "any agency and any official of the United States acting in his or her official capacity." 28 U.S.C. § 2412(d)(2)(C). The question of agency has not been raised

---

5. Though the Court might be disposed to award attorney's fees to the plaintiff for work done prior to the June 27, 1978 letter and for some time during settlement negotiations thereafter, we need not make that decision here. The plaintiff's Motion for Fees covered only the time period from February 9, 1981 to March 31, 1983 during which time the offer of settlement was

outstanding. Nevertheless, Mr. Clay's case illustrates that even a suit which begins as a reasonable challenge to municipal authority will at some point become vexatious and unreasonable when settlement offers are repeatedly refused and the suit is prolonged by more than four years.

by the parties before the Court, but it is a factor in this case.

The plaintiff's Complaint is a proper § 1983 action claiming harassment by municipal officials. Had that claim persisted throughout the suit, we might ignore the EAJA standards. However, the negotiations and final settlement suggest that the plaintiff meant to attack the redevelopment plan itself. This plan is approved and funded in part by federal agencies. *See* 42 U.S.C. § 1455. *See also* Answer of Defendant James E. Armstrong, filed April 17, 1980, at ¶ 5, 6. The Consent Decree requires that the defendants make substantial expenditures. They must build a fence, buy up junk cars, construct a road, and perhaps subsidize the purchase of the West 5th Avenue property. Will these costs ultimately fall upon the federal government through its Urban Renewal Contract with Gary, Indiana? If so, and the United States or a federal agency is the real party in interest here, *Tennessee Valley Authority v. Pressnell*, 328 F.2d 580 (6th Cir. 1964), the motions under § 1988 are inappropriate. In such a case, the EAJA sets out the standard for fee awards.

The EAJA definition of "agency" was discussed by the Court in *National Resources Defense Council v. U.S.E.P.A.*, 703 F.2d 700, 707 (3d Cir.1983). In construing the term "position" under 28 U.S.C. § 2412(d)(1)(A), the Court of Appeals observed that " 'position of the United States' means position taken by 'any agency and any official of the United States acting in his or her official capacity.' ... [T]he underlying conduct of the agency, not merely its trial conduct, must be considered." (citations omitted). *Id.* at 707. The fee claims there were levied against the EPA in a suit to enforce the Clean Water Act. EAJA claims have also proceeded against the U.S. Civil Service Commission, *Glick v. USCCC*, 567 F.Supp. 1483 (N.D.Ill.1983), and the Immigration and Naturalization Service, *Ramos v. Haig*, 716 F.2d 471 (7th Cir.1983).

In *Grand Blvd. Imp. Co. v. Chicago*, 553 F.Supp. 1154 (N.D.Ill.1982), the District Court considered fee claims in two separate suits challenging certain administrative actions by HUD. In one case, the Court had enjoined HUD from releasing funds to the City of Chicago for a proposed housing project until the City explored possible modifications of its redevelopment plan. In the second suit, the District Court found that HUD's decision to sell an apartment complex should be enjoined. The plaintiffs in both suits sought attorney's fees.

The two suits are strikingly similar to one which Mr. Clay might have brought, and which the ultimate relief he obtained suggests he intended to bring. Municipal actors were crucial in the *Grand Blvd.* suits, as they were in the case at bar. Yet after the *Grand Blvd.* theories were shaken down, and relief awarded, the plaintiff moved for fees from the federal parties. In considering this anomaly, the District Court there wrote that

> the ultimate relief plaintiff obtained—enjoining the sale of South Shore—is substantially the same as plaintiff would have been entitled to had they prevailed on their other theories in the case. That fact, while not dispositive, is indicative of the fact the attack on the sale of South Shore was but a single claim upon which plaintiff "essentially succeeded."

553 F.Supp. at 1168–69.

The Court instead focused on the single transaction or occurrence forming the basis of the suit. It was happenstance that some theories succeeded and others failed, and that fact "should not be used to reduce the amount of their fee award." *Id.* at 1168.

The Consent Decree between the City of Gary and Mr. Clay inhibits this Court from fully exploring the legal theories of the case at bar. The federal defendants, for example, may have remained in the background only because settlement was in the offing from the very first stages of the litigation. Had the plaintiff moved for fees from the federal actors, *Grand Blvd.* instructs that where the government defends an agency's application of an undisputed legal standard (in this case, 42 U.S.C. § 1455 *et seq.*) to the facts of a given case,

"a finding that the agency's action was arbitrary, capricious, or an abuse of discretion, is determinative of the private parties' right to fees under the EAJA." *Id.* at 1163. Since the facts at bar fail to pass the less onorous standard of the *Nadeau* test, fees are presumptively unavailable under the EAJA standard. Alternatively, the record demonstrates the defendants' conciliatory posture throughout these proceedings and testifies to the reasonableness of their position. *See Glick v. U.S. Civil Service Commission,* 567 F.Supp. 1483, 1485, 1485–86 (N.D.Ill.1983).

Given the vagueness with which the record of this case addresses the federal-municipal relationship, and the ultimate Consent Decree, the Court will not presume to decide that the parties should have proceeded under the EAJA. However, the possible applicability of the EAJA to the suit is a "special circumstance" which should affect an analysis of the plaintiff's § 1988 motion.

*Conclusion*

The plaintiff, Mr. Clay, failed to meet the two prongs of the *Nadeau* test. Though portions of his relief were causally related to the suit, the defendants offered those conciliations gratuitously. In the alternative, special circumstances would affect a fee award. First, the suit appears vexatious and such suits should be discouraged. Second, the close relationship between federal and municipal actors may require that the EAJA standard rather than that of § 1988 be applied to determine attorney's fees.

It is therefore ORDERED that the plaintiff's Motion for Attorney's Fees is DENIED.